UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Harold Oakes**

    v.                                            Civil No. 12-cv-298-LM

**Edward Reilly, Warden,**
**Northern Correctional Facility**


REPORT AND RECOMMENDATION

Before the court is the respondent's motion for summary

judgment (doc. no. 24) on the 28 U.S.C. § 2254 petition filed by

Harold Oakes.[1]  Oakes objects to the motion (doc. no. 25).  The

motion is before the undersigned magistrate judge for a report

and recommendation, pursuant to LR 72.1.  For the reasons stated

below, this court recommends that the district judge grant the

motion for summary judgment (doc. no. 24), deny the § 2254

petition, and decline to issue a certificate of appealability.


**Background**[2]

I.    **Assault and Trial**

On November 8, 2007, Sadie Tetreault, a foster care mother,

reported to the Vermont Department of Children and Families

---

[1] As discussed further below, Oakes originally filed a petition
for a writ of habeas corpus in this court on August 2, 2012
(doc. no. 1).  Oakes filed his amended petition (doc. no. 19),
which is the operative petition in this action, on April 22,
2014.

("VDCF") that Oakes had sexually abused her foster daughter, "E.N.," a child under the age of thirteen. The VDCF Investigator reported the allegations to the Enfield, New Hampshire Police Department.

The Enfield Police contacted Oakes and interviewed him for one and a half hours on December 1, 2007. On December 6, 2007, Oakes arrived at the police station at 9:00 a.m. to take a polygraph examination. After the polygraph examination, a detective, Detective Holland, interviewed Oakes from 12:30 p.m. to 3:40 p.m. During the interview, Oakes made several incriminating statements and wrote a letter of apology to the victim.

On February 15, 2008, Oakes was indicted on two counts of aggravated felonious sexual assault and one count of sexual assault. On July 28, 2008, Oakes's trial counsel filed a motion to suppress Oakes's statements to police on the ground that Oakes's confession was not voluntary. The trial court denied the motion to suppress on the ground that it was not timely filed.

In November of 2008, Oakes filed a motion to exclude from his trial any testimony about the polygraph examination and

---

[2] The facts of the case are largely taken from State v. Oakes, 161 N.H. 270 (2010). Certain details have been filled in by consulting the parties' filings.

results, which the trial court granted.  In response, the State moved that Oakes be precluded from discussing the time of his arrival at the police station on December 6, arguing that it would confuse the jury since the State was not permitted to discuss the polygraph examination.  Over Oakes's objection, the trial court granted the State's motion, ruling that Oakes could not testify to the time he spent in the police station for the polygraph examination if the State did not "have an opportunity to explain what [Oakes] was doing there or why."

On the last day of trial, the State filed a motion in limine to prevent Oakes from testifying to the time of his arrival at the police station for the December 6 interview. Oakes's counsel had referenced the time period in his opening statement and two defense witnesses had also testified as to the length of time Oakes was at the police station that day.  The State argued that the ruling on Oakes's previous motion in limine excluded all references to the polygraph examination, including the length of time that Oakes was in the station to take it.  Oakes's counsel did not object, stating, "No, I believe that's all decided and agreed to, Your Honor."  The trial court granted the State's motion, finding it consistent with its previous ruling on the motion to exclude the polygraph examination testimony, where the court found that "the evidence

regarding the time at which [Oakes] arrived" at the police

station on December 6 was inadmissible.

The jury convicted Oakes on all three charges.  Oakes was

sentenced to a term of fifteen to forty-five years in the New

Hampshire State Prison for Men, and ordered to make restitution

payments of up to $10,000 to the alleged victim.

## II.  Direct Appeal

Oakes appealed his conviction to the New Hampshire Supreme

Court ("NHSC"), raising several challenges to the trial court's

rulings, including a challenge to the ruling that evidence of

the time Oakes spent at the police station during his December 6

interview was inadmissible.  The NHSC affirmed Oakes's

conviction, holding that the trial court did not "unsustainably

exercise[] its discretion in granting the State's motions to

exclude the defendant's testimony about the time of his arrival

at the police station."  Oakes, 161 N.H. at 284.

## III. Petition for Habeas Relief to Superior Court

On May 20, 2011, after the NHSC affirmed his conviction,

Oakes filed a petition for writ of habeas corpus in the New

Hampshire Superior Court, Coös County ("CCSC").  Oakes asserted

in his petition that his trial counsel was ineffective for

failing to file a timely motion to suppress his comments to

police.  At a hearing on his petition, Oakes argued that a

motion to suppress would have been successful because his statements were made as a result of an improperly conducted and improperly recorded polygraph examination.  This was the first time in the habeas corpus proceeding that Oakes raised a concern about the polygraph examination and the manner in which the examination was administered.  The CCSC directed Oakes to amend his petition to address his claims concerning the polygraph examination.  In his amended petition, Oakes asserted that the polygraph examination that was administered "may have been a ruse."  CCSC Or. (doc. no. 19-2) at 3.  Oakes also moved to depose the polygraph examiner, David Crawford.

On November 7, 2011, the CCSC denied Oakes's petition. With regard to Oakes's claim that the polygraph examination may have been a ruse, the court held:

> [A]ssuming without deciding that the polygraph
> examination was a ruse, the petitioner has not
> explained how, or even alleged that, any such trickery
> or deceit induced him to make the statements to
> Detective Holland that the petitioner now seeks to
> suppress.  Likewise, assuming without deciding that
> Crawford in fact administered the polygraph
> examination but improperly administered it and/or
> improperly documented it, the petitioner has not
> alleged that any such deficiencies in the polygraph
> examination induced him to make the statements.  The
> petitioner has not asserted that, or explained how,
> his statement to Detective Holland were precipitated
> or extracted by the acts he suspects Crawford may have
> committed . . . .  Accordingly, any such acts have no
> bearing on the voluntariness of the petitioner's
> statements and do not support his contention that his
> statements were involuntary.

Id. at 15 (internal citation omitted).

Oakes filed a notice of discretionary appeal on December 7, 2011.  The NHSC declined the notice on January 25, 2012.

## IV.   Petition for Habeas Relief in this Court

Oakes filed a petition for writ of habeas corpus in this court on August 2, 2012.  On December 11, 2012, the court issued an order stating that Oakes's petition did not demonstrate that Oakes had exhausted, in the state courts, the federal claims he raised in the petition.  Oakes subsequently requested and was granted a stay in this action in order to exhaust his claims in state court.

Oakes filed a second petition for writ of habeas corpus in the CCSC on January 29, 2013.  On July 18, 2013, that court denied the petition.

Oakes filed an amended petition with this court on April 22, 2014.  The respondent moves for summary judgment on the amended petition.  Oakes objects.


## Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court cannot grant habeas relief with respect to a claim that was adjudicated on the merits in state court unless adjudication of the claim resulted in a decision

that (i) "was contrary to" clearly established federal law, as determined by the Supreme Court of the United States, (ii) involved an "unreasonable application of" clearly established federal law, or (iii) was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is "contrary to" established Supreme Court precedent if either the state court reaches a conclusion on a question of law "diametrically different" to that reached by the Supreme Court, or a state court "confronts a set of facts that are materially indistinguishable" from relevant Supreme Court precedent and reaches an opposite result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision is an "unreasonable application" of clearly established federal law if the state court (i) "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts" of a prisoner's case, (ii) "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply" or (iii) "unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407; see L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002).  In order to meet this standard, the state court's application of law must contain "some

increment of incorrectness beyond error . . . . The increment

need not necessarily be great, but it must be great enough to

make the decision unreasonable in the independent and objective

judgment of the federal court."  McCambridge, 303 F.3d at 36

(internal quotation marks and citation omitted).

This deferential standard of review applies to all claims

that were "adjudicated on the merits" in state court.  28 U.S.C.

§ 2254(d).  "If the federal claim was never addressed by the

state court, federal review is de novo."  Pike v. Guarino, 492

F.3d 61, 67 (1st Cir. 2007).  Here, the state courts adjudicated

Oakes's claims on the merits, and therefore, the court applies

the deferential standard of review to the claims.  See

Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 784-85

(2011) ("When a federal claim has been presented to a state

court and the state court has denied relief, it may be presumed

that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to

the contrary.").

## Discussion

Oakes raises two issues in his petition.  The first is that

the CCSC erred in its decision denying his petition for habeas

relief when it held that even if the polygraph examination was a

ruse, Oakes's inculpatory statements to the police were voluntary.  The second is that the NHSC erred in its decision affirming his conviction when it held that the trial court sustainably exercised its discretion in excluding Oakes's testimony about the time of his arrival at the police station on December 6, 2007.

## I.   CCSC Decision

Oakes frames his challenge to the CCSC's decision as a legal challenge to the court's holding "that even if the police polygraph was a ruse, [Oakes's] rights had not been violated." Am. Pet. (doc. no. 19) at 8.  His petition, however, appears to also challenge the CCSC's holding that, given all the factors surrounding his time at the police station on December 6, 2007, his confession was voluntary.  See id. at 13 ("[T]he police made the conscious decision not to fully and effectively advise Mr. Oakes of his rights, even though he had been subject to a three-hour polygraph examination, had not been offered food or water, and had not taken either lunch or his medication."); see also id. ("In light of [Missouri v. Seibert, 542 U.S. 600 (2004)], the conditions to which Mr. Oakes was subjected and in particular the ruse polygraph render any implied waiver of rights by Mr. Oakes involuntary.").

The court thus construes Oakes's petition here to raise two
issues with respect to the CCSC's decision: (i) if the police
gave Oakes a fake polygraph examination, that alone should
render Oakes's incriminating statements involuntary; and (ii)
even if the fake polygraph examination did not itself render
Oakes's incriminating statements involuntary, the totality of
the circumstances surrounding his interrogation rendered his
statements involuntary.  Oakes argues that the CCSC's decision
on these two issues was contrary to or an unreasonable
application of clearly established Supreme Court precedent.

A.   Polygraph Examination

Oakes argues that the CCSC's holding that, even assuming
the polygraph examination was a ruse, Oakes's confession was not
involuntary was contrary to and an unreasonable application of
the Supreme Court's decision in Seibert.  The Supreme Court's
holding in Siebert is discussed further below but, suffice to
say, the facts of the case do not involve a polygraph
examination or otherwise pertain to Oakes's argument on that
point.  Thus, Oakes's reliance on Siebert is misplaced.

Oakes does not cite any Supreme Court precedent in support
of his "fake polygraph examination" argument.  The only case
addressing the use of polygraph examinations Oakes has cited is
Fields v. Wyrick, 682 F.2d 154 (8th Cir. 1982).  Oakes contends

that <u>Fields</u> supports the principle that the use of a polygraph

examination alone is "sufficient to trigger concerns about

constitutional rights."  Am. Pet. (doc. no. 19) at 10.

   <u>Fields</u> is not Supreme Court precedent and, therefore, is

not sufficient to provide a basis for habeas relief.  <u>See, e.g.</u>,

<u>Glebe v. Frost</u>, 131 S. Ct. 429, 431 (2014) ("As we have

repeatedly emphasized, however, circuit precedent does not

constitute 'clearly established Federal law, as determined by

the Supreme Court.'") (quoting § 2254(d)(1)).  Even if <u>Fields</u>

could be considered controlling for purposes of habeas relief,

the court's holding does not support Oakes's argument.  <u>See</u>

<u>Fields</u>, 682 F.2d at 159 ("We do not, of course, imply that the

use of a polygraph and its 'results' is the kind of 'trickery'

that necessarily renders post-test confessions involuntary.").

   The Supreme Court has held that although police engagement

in trickery or misrepresentation is relevant to the

determination of the admissibility of a confession, it is

insufficient on its own to render an otherwise voluntary

confession inadmissible.  <u>See</u> <u>Schneckloth v. Bustamonte</u>, 412

U.S. 218, 226 (1973); <u>Frazier v. Cupp</u>, 394 U.S. 731, 739 (1969);

<u>Hoffa v. United States</u>, 385 U.S. 293 (1966).  Although the

Supreme Court has not directly addressed the use of a fake

polygraph examination, at least one court has held that, under

Supreme Court precedent, a fake polygraph examination alone is insufficient to render a confession involuntary and thus does not provide a basis upon which to grant federal habeas relief. See Mays v. Clark, No. CIV S-10-533 LKK CHS, 2012 WL 1037942, at *25 (E.D. Cal. Mar. 27, 2012) ("Under the circumstances of this case, use of a fake polygraph was not inherently coercive, and the state court's rejection of this claim was not contrary to, or an unreasonable application of established Supreme Court precedent.").[3]

Here, Oakes has not shown that the CCSC's holding concerning the polygraph examination is contrary to or an unreasonable application of federal law.  Further, the CCSC found that Oakes did not show that the polygraph examination induced him to make any of the inculpatory statements.  Oakes does not contest that factual finding in his habeas petition in this case.  Accordingly, Oakes has not demonstrated that he is entitled to relief under § 2254(d) on this claim.

B.    Voluntariness of Confession

Oakes argues that even if the potentially fake polygraph examination was not itself sufficient to show that his incriminating statements were involuntary, the totality of the

---

[3] It is worth noting that, despite Oakes's suggestion to the contrary, the CCSC did not make any finding as to whether the polygraph examination was actually a ruse.

circumstances surrounding his interrogation and confession rendered his statements involuntary. He contends that the CCSC's holding that his statements were voluntary was contrary to and an unreasonable application of Seibert.

In Siebert, the Supreme Court held that when an officer intentionally interrogates a suspect without any Miranda warnings in order to obtain a full confession, then provides the suspect with full Miranda warnings, and then gets the suspect to repeat his confession, the warned confession may be suppressed even if the first statement was made voluntarily. 542 U.S. at 613-14. The Supreme Court explained that the "question-first" tactic undermines the effectiveness of the Miranda warnings. Id. The Court noted that in such a situation, Miranda warnings are not effective because a suspect would not "think he had a genuine right to remain silent, let alone persist in so believing" after he already confessed and "police led him over the same ground again." Id. at 613. The Court concluded that where such a tactic is intentionally utilized by the police "the [trial] court must suppress post-warning statements unless the interrogators take curative measures to apprise the defendant of his rights." Id. at 622 (Kennedy J., concurring).

Oakes appears to argue in his petition that the police used an interrogation strategy to circumvent the requirement that

they give Oakes his <u>Miranda</u> warnings in violation of <u>Siebert</u>.

The police's "interrogation strategy" was supposedly executed by

(i) not giving Oakes the opportunity to take a break during the

interrogation or to leave the room to take medication, (ii)

Detective Holland being aggressive with Oakes and following him

when he went to the bathroom, (iii) not offering Oakes food or

water throughout the interrogation, (iv) indicating by their

actions that Oakes was not free to leave, and (v) giving Oakes a

fake polygraph examination.

As the CCSC found, and Oakes concedes in his petition,

Oakes voluntarily traveled to the police station on December 6,

2007, and voluntarily participated in the polygraph examination

and the police interview after being advised that he was not

under arrest and had the right to leave. The CCSC reasonably

found that Oakes was not confused and that the "entire interview

was relatively sedate, cordial, and unconfrontational [sic]."[4]

CCSC Or. (doc. no. 19-2) at 13. Because Oakes's freedom was not

restricted to the point where he was considered to be "in

---

[4] Oakes does not challenge the CCSC's factual findings. Even if
he had, an examination of the record shows that the CCSC's
factual determination is not unreasonable. See <u>Schriro v.
Landrigan</u>, 550 U.S. 465, 473 (2007) ("The question under AEDPA
is not whether a federal court believes the state court's
determination was incorrect but whether that determination was
unreasonable – a substantially higher threshold." (internal
citation omitted).

custody," his right to <u>Miranda</u> warnings was not triggered and

<u>Siebert</u> does not apply.[5]  <u>See</u> <u>United States v. Fata</u>, No. 2:11-cr-

188-RLH, 2012 WL 1715496, at *15 (D. Nev. Mar. 15, 2012)

("Application of <u>Siebert</u> is conditioned upon the failure of law

enforcement to advise a defendant of his <u>Miranda</u> rights in the

first instance.  Because the Court has found that Mr. Fata was

not 'in custody' during the roadside detention, there was no

failure to administer <u>Miranda</u> rights at that time.  As such,

<u>Siebert</u> is inapplicable."); <u>United States v. Brumfield</u>, 1:10-CR-

053-CAP-ECS-1, 2011 WL 5978082, at *7 n.9 (N.D. Ga. Feb. 18,

2011) (<u>Siebert</u> does not apply because "Defendant was not in

custody when he gave" the incriminating statements.).

    The CCSC's rejection of this claim was neither contrary to,

nor an unreasonable application of, clearly established federal

law as determined by the United States Supreme Court.  <u>See</u> 28

U.S.C. § 2254(d).  Accordingly, Oakes is not entitled to habeas

relief on this claim.

## II.  <u>NHSC Decision</u>

    Oakes challenges the NHSC's decision concerning the trial

---

[5] Even if Oakes were in custody at the time he made his
statements, his claim would still be without merit.  There is
nothing in the record to support the claim that the detectives
deliberately used a two-step method to elicit a confession and,
therefore, <u>Siebert</u> is inapplicable.  <u>Seibert</u>, 124 U.S. at 622
(Kennedy J., concurring) ("If the use of the two-step method is
not deliberate, however, the post-warning statements are
admissible if they were voluntarily made.").

court's ruling on a motion in limine precluding Oakes from testifying as to the length of time he was interrogated on December 6, 2007.  The NHSC held that the trial court did not unsustainably exercise its discretion in making that ruling.

"An erroneous evidentiary ruling that results in a fundamentally unfair trial may constitute a due process violation and thus provide a basis for habeas relief."  Lyons v. Brady, 666 F.3d 51, 55 (1st Cir. 2012).  "However, to give rise to habeas relief, 'the state court's application of state law must be so arbitrary or capricious as to constitute an independent due process . . . violation.'"  Id. (quoting Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011)) (internal quotation marks and citation omitted).  "To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible."  Petrillo v. O'Neill, 428 F.3d 41, 44 n.2 (1st Cir. 2005).  For habeas purposes, if the petitioner adequately asserts a constitutional claim, the court reviews the state court's determination under the AEDPA standards.

In the order affirming Oakes's conviction, the NHSC explained that:

> The trial court ruled that the defendant could not
> testify to the time he spent in the police station for
> the polygraph test if the State could not explain why
> the defendant was present in the station.  If the

16

> defendant were to have testified that he spent the
> morning at the police station with no reference to the
> polygraph exam, the jury would have been misled by
> reasonably concluding that the defendant had been
> interrogated for an additional three hours.

Oakes, 161 N.H. at 283.  In other words, the trial court held

that because Oakes had successfully moved to exclude evidence of

the polygraph examination he took on the morning of December 6,

2007, he was not allowed to testify as to the time he arrived at

the police station that morning because such testimony would

mislead the jury.  The NHSC's decision that the trial court did

not unsustainably exercise its discretion in making that ruling

was not arbitrary or capricious.[6]

In addition, even had Oakes established that the trial

court violated his constitutional rights by excluding evidence

of the time he arrived at the police station on December 6,

2007, he would not be entitled to habeas corpus relief because

the error was harmless.  An error is harmless in the habeas

corpus context unless it "'had substantial and injurious effect

or influence in determining the jury's verdict.'"  Fry v.

Pliler, 551 U.S. 112, 116 (2007) (quoting Brecht v. Abrahamson,

---

[6] Oakes suggests in his petition that "[h]ad the trial court
ruled in favor of allowing Mr. Oakes to testify to the time he
first arrived at the police station, the State could have filed
its own motion seeking to admit evidence of the polygraph."  Am.
Pet. (doc. no. 19) at 18.  Considering that the trial court had
already granted Oakes's motion to exclude evidence of the
polygraph examination, that argument is unavailing.

507 U.S. 619, 637 (1993)).  Oakes appears to assert that, had

the jury heard about the amount of time he was at the police

station on December 6, 2007, it may have acquitted him.  The

record demonstrates, however, that despite the court's ruling,

the jury did hear about the time Oakes arrived at the police

station that day, in defense counsel's opening statement and in

the testimony of two defense witnesses.  See Oakes, 161 N.H. at

275.  Therefore, Oakes's argument is without merit.

Viewing the record in the light most favorable to Oakes,

neither the CCSC's decision nor the NHSC's decision was contrary

to or an unreasonable application of clearly established federal

law.[7]  28 U.S.C. § 2254(d).  Accordingly, the district judge

should grant the respondent's motion for summary judgment (doc.

no. 24), and deny the habeas petition.

## III. <u>Certificate of Appealability</u>

The Rules Governing Section 2254 Proceedings ("§ 2254

Rules") require the court to "issue or deny a certificate of

appealability when it enters a final order adverse to the

party."  § 2254 Rule 11(a).  The court will issue the

certificate "only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. §

---

[7] Although Oakes did not challenge either the CCSC's or the
NHSC's factual findings, an examination of the record shows that
the courts' factual determinations are not unreasonable.  28
U.S.C. § 2254(d).

2253(c)(2).  Oakes has failed to make such a showing.

Accordingly, the district judge should decline to issue a

certificate of appealability in this case.


## Conclusion

For the foregoing reasons, the court recommends that the

district judge grant the respondent's motion for summary

judgment (doc. no. 24), deny the § 2254 petition, and decline to

issue a certificate of appealability.  Any objections to this

Report and Recommendation must be filed within fourteen days of

receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure

to file objections within the specified time waives the right to

appeal the district court's order.  See United States v. De

Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37

v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010)

(only issues fairly raised by objections to magistrate judge's

report are subject to review by district court; issues not

preserved by such objection are precluded on appeal).


                                        _____
                                        Andrea K. Johnstone
                                        United States Magistrate Judge

February 11, 2015

cc:  Mark L. Sisti, Esq.
     Elizabeth Woodcock, Esq.